**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ESTATE OF BRUCE H. BARTON,[*]<br>*Plaintiff-Appellant*,<br><br>v.<br><br>ADT SECURITY SERVICES PENSION PLAN, a pension plan; TYCO INTERNATIONAL MANAGEMENT COMPANY, as plan sponsor; TYCO INTERNATIONAL MANAGEMENT COMPANY, LLC, Administrative Committee,<br>*Defendants-Appellees.* | No. 13-56379<br><br>D.C. No.<br>2:12-cv-06971-BRO-CW<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted
October 23, 2015—Pasadena, California

Filed April 21, 2016

Before: Alex Kozinski, Sandra S. Ikuta, and John B.
Owens, Circuit Judges.

---

[*] The Estate of Bruce H. Barton is substituted as Plaintiff-Appellant pursuant to Fed. R. App. P. 43(a).

2                    ESTATE OF BARTON V. ADT

Opinion by Judge Owens;
Dissent by Judge Ikuta

**SUMMARY**[**]

**Employee Retirement Income Security Act**

The panel reversed the district court's judgment after a
bench trial in favor of the defendants in an action under the
Employee Retirement Income Security Act, challenging a
denial of pension benefits on the basis that the plaintiff did
not have sufficient years of service with an employer or its
affiliates.

The panel held that the burden of proving entitlement to
benefits was not properly placed on the plaintiff because the
defendants were in a better position to ascertain whether an
entity was a participating employer in the ERISA plan. The
panel held that when a claimant has made a prima facie case
that he is entitled to a pension benefit but lacks access to the
key information about corporate structures or hours worked
needed to substantiate his claim, and the defendant controls
such information, the burden shifts to the defendant to
produce this information. The panel remanded the case to the
district court to apply the correct burden of proof.

Dissenting, Judge Ikuta wrote that the majority's burden-
shifting rule was contrary to the abuse of discretion review
applicable to the plaintiff's claim.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

**COUNSEL**

Morris S. Getzels (argued), Morris S. Getzels Law Office, Tarzana, California, for Plaintiff-Appellant.

Stuart D. Tochner (argued), Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Los Angeles, California, for Defendants-Appellees.

**OPINION**

OWENS, Circuit Judge:

Bruce Barton appeals from the district court's judgment concluding that the ADT Security Services Pension Plan Administrator did not abuse its discretion in denying Barton's request for pension benefits. Because the district court did not have the benefit of our analysis regarding the burden of proof in a case such as this, we reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND

### A. Barton's Employment History

The parties dispute Bruce Barton's employment history with the American District Telegraph Company (ADT) and/or its affiliates (ADT-related entities). Barton asserts that he worked for ADT from November 1967 until he resigned in September 1986. The parties agree that he also worked for

4           ESTATE OF BARTON V. ADT

a moving company for a short period in 1968 and served in the Marine Reserves from 1965–1971.[1]

The three named defendants in this case—ADT Security Services Pension Plan (pension plan), Tyco International Management Company (plan sponsor), and Tyco International Management Company, LLC Administrative Committee (plan administrator)—maintain that they have access to the pension records passed on by ADT, Inc., which Tyco acquired in 1997.

**B.  Relevant Pension Plans**

Because Barton's employment spanned eighteen years, two different plans govern his eligibility for a pension benefit: the plan in effect January 1, 1968 (1968 Plan) and the plan in effect January 1, 1985 (1985 Plan).  Under the terms of the 1985 Plan, the 1968 Plan governs Barton's service through December 31, 1975, and the 1985 Plan governs his service as of January 1, 1976.  Barton maintains that his right to a pension vested because, although he stopped working before normal retirement age, he completed at least ten years of "continuous service" with the company.

The 1985 Plan defines "Company" as "American District Telegraph Company and such of its Affiliated Companies as

---

[1] Contrary to the dissent's characterization of Barton's "sporadic" work history, Barton's FICA records indicate that he received consistent wages from an ADT-related entity from the fourth quarter of 1967 through his resignation in 1986.  *See* Dissent at 24.  Through 1971, he received *additional* wages from his service in the Marine Reserves.  Also while employed at an ADT-related entity, in the fourth quarter of 1968 he worked briefly for a moving company to earn $162.72 in extra "Christmas money."

have adopted the Plan and have been admitted to participation therein by the Board or any one or more of them, and any corporation succeeding to the rights and assuming the obligations of any such company." An "Affiliated Company" is "a company which is a member of a controlled group of corporations of which the American District Telegraph Company is also a member." The 1968 Plan defines "Company" as the "American District Telegraph Company and those controlled companies authorized by the Board of Directors to participate in the Plan."

The 1985 Plan defines "Continuous Service" as follows. For employment through December 31, 1975, "Continuous Service shall be that service determined under the terms of the Plan as it was constituted on December 31, 1975." After January 1, 1976, "[o]ne year of Continuous Service shall be recorded for any Plan Year during which an Employee has 1,000 or more Hours of Service." A plan year in which an employee works 500 hours or less is considered a "break in service." Additionally, to the extent required by ERISA or determined by the Board of Directors, if an employee transfers to a participating company from an affiliated company after January 1, 1976, he will receive credit for his continuous service to that affiliate prior to 1976, even if the affiliate had not adopted the Plan.

The 1968 Plan does not define "continuous employment," save for the following provision regarding absence without pay:

> Any absence from the service without pay . . . shall be considered as a break in the continuity of service, and persons re-employed after such a break shall be

considered as new employees and the term of
employment reckoned from the date of such
re-employment; except that any such person
reemployed for at least ten continuous years
after such a break shall have his term of
employment reckoned from the date of his
initial employment less the entire period of
such break.

## C.  Barton's Request for Pension Benefits

In 2010, Barton reached age sixty-five and contacted the
pension record keeper about benefits.  A December 13, 2010
letter from a pension benefit administrator in response stated
that the administrator "could not find any information on
[Barton's] employment with ADT Security Services, Inc.,"
and enclosed instructions for navigating the pension claim
procedure.  Barton then provided documentation regarding
his employment with ADT-related entities.  In a June 24,
2011 letter, the pension record keeper said the documents
Barton had sent failed to establish that he had a vested
pension, and that if Barton had additional documentation—
for example, a letter of vested benefits—he could file a claim
with the Employee Benefits Committee.  In response to a
telephone inquiry, Barton was again informed that he was
ineligible for a pension benefit.

Barton filed a claim with the Committee on October 3,
2011.  He stated that two former colleagues from the ADT
office in Portland, Maine had provided similar documentation
and received ADT pensions.   He included copies of
correspondence from the pension record keeper and the
following documents:

- November 11, 1977 letter from R.B. Carey, Jr., President of ADT, on ADT letterhead listing an address of One World Trade Center, Suite 9200, NY, NY, addressed to "Mr. B. N. Barton, American District Telegraph Company" at the same World Trade Center address and suite. The letter congratulates Barton on his completion, on November 13, 1977, of ten years of service as a "member of the ADT organization."

- Copies of key cards and identification/business cards issued by "ADT."

- W-2 statements from 1980–1983 and 1986, listing employer as "American District Telegraph Co." at 1 World Trade Center, NY, NY and showing an X marking the "Pension Plan" box.

- Pay stubs from 1981 and 1985 listing "American District Telegraph" at the bottom.

- Personnel Data Maintenance forms from 1984, 1985, and 1986 listing Barton's current annual salary, raise, and new annual salary.

- Social Security Administration documentation summarizing Federal Insurance Contributions Act (FICA) withholding from 1968–1980.[2]

---

[2] Barton provided more detailed FICA records during his administrative appeal.

## D. Committee's Denial of Barton's Claim

The Committee denied Barton's claim on January 10, 2012. It reported that it had reviewed the documents listed above as well as the following documents that Barton had provided earlier:

- Barton's September 11, 1986 resignation letter on ADT letterhead.

- September 12, 1986 Memorandum on ADT letterhead confirming receipt of a credit card, tools, and company truck.

- Barton's September 12, 1986 Exit Interview Questionnaire that listed a November 10, 1967 date of employment.

- Handwritten telephone conversation record describing Barton's July 6, 2011 call to the pension record keeper.

The Committee detailed the relevant plan provisions and wrote:

> [T]here are no Plan records indicating your eligibility for participation in the Plan, your actual participation in the Plan, or your eligibility for benefits under the Plan. In addition, it was unclear from the information you provided whether you had a continuous term of employment or earned the required service to earn at least 10 Years of Continuous Service so as to be vested in a Plan benefit.

The Committee further explained that it was "not clear based on the information" that Barton provided that he met the terms of continuous employment. In particular, the Committee noted that the FICA records and W-2s did not cover each year of claimed employment, and that some documents lacked identifying information. Such information "did not override or contradict the Plan records." The letter detailed the appeals procedure and suggested Barton could "supply copies of any further evidence . . . that would indicate that [he is] entitled to a Plan benefit, such as certified Social Security records for the entire period of time from 1967 through 1986 or a pension benefit statement or written evidence that [he was] eligible to receive a Plan benefit."

On January 19, 2012, Barton responded and requested copies of "all plan documents, records and other information affecting the claim per your document concerning Applying for Benefits and Claim and Appeal Procedures." He specifically requested a Tyco International Summary Plan Description booklet, the Committee's copy of the Social Security records, an example of a pension benefit statement and written evidence statement, and "application forms that should have been provided by the service center." The Committee responded by letter and enclosed a memorandum prepared by outside counsel summarizing key provisions of the 1968 and 1985 Plans, and the full text of the Plans. Nothing in the record indicates that the Committee included the full 1983 Summary Plan Description (SPD) (referenced in the memorandum drafted by outside counsel) or exemplars of a pension benefit statement or "written evidence statement" as Barton requested.

### E. Barton's Appeal of the Committee's Denial

Barton appealed the Committee's denial on April 29, 2012. He presented additional FICA records, broken down quarterly from 1967–1977 when he was an hourly employee and annually from 1978–1986 when he was a salaried employee.

The Committee denied Barton's appeal on June 29, 2012. The Committee again noted there was no official record of Barton's participation in the Plan and that the documentation he submitted "was insufficient to override the Plan records." As with the initial denial, the appeal notice stated that "[i]t is not clear based on the information you provided that you were continuously employed with American District Telegraph Company." The Committee also noted that the FICA records revealed that Barton had worked for companies in addition to ADT, which "*could* indicate that [he] did not have a continuous term of employment." (emphasis added). In other words, because Barton could not document that he worked 1000 hours or more for each of the nearly twenty years he was employed by ADT and its affiliates, or that his employers participated in the Plans, he could not prove he was entitled to a pension.

### F. Procedural History

On August 13, 2012, Barton filed suit in the Central District of California pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132. He sought (1) declaratory relief that he was entitled to a pension; (2) pension benefits based on his employment with ADT; and (3) recovery of statutory penalties under 29 U.S.C.

§ 1132(c)(1) based on the pension administrator's failure to comply with ERISA's disclosure obligations.

After a bench trial, the district court issued its Findings of Fact and Conclusions of Law on July 19, 2013. It held that the applicable standard of review was abuse of discretion and that the Committee did not abuse its discretion in denying Barton pension benefits. It declined to award Barton statutory penalties, holding that he lacked standing to assert a violation of ERISA's disclosure requirements because he did not have a colorable claim to pension benefits. Barton timely appealed.

## II. ANALYSIS

### A. Standard of Review

"We review de novo a district court's choice and application of the standard of review to decisions by fiduciaries in ERISA cases. We review for clear error the underlying findings of fact." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc) (citation omitted). We also review de novo a district court's allocation of the burden of proof. *See Molski v. Foley Estates Vineyard & Winery, LLC*, 531 F.3d 1043, 1046 (9th Cir. 2008) (citing *Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co.*, 940 F.2d 550, 555 (9th Cir. 1991)).

### B. Burden of Proof

The district court faithfully applied our precedent in reviewing the Committee's denial of benefits for abuse of discretion. *See Abatie*, 458 F.3d at 963 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). But

because the district court incorrectly placed the burden of proof on Barton for matters within defendants' control, we remand to the district court in light of this opinion. We express no view on Barton's eligibility for pension benefits.[3]

A claimant may bear the burden of proving entitlement to ERISA benefits. *See, e.g.*, *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294–95 (9th Cir. 2010) (holding that where a court reviews a plan administrator's decision de novo, the claimant has the burden of proof). This rule makes sense in cases where the claimant has better—or at least equal—access to the evidence needed to prove entitlement. For example, where an employee must establish an illness to qualify for disability benefits, the burden lies most sensibly with the claimant, who can provide test results, physician reports, and other evidence about her condition. *See, e.g.*, *id.* at 1298 (holding that the claimant failed to establish he was "totally disabled" within the meaning of a long-term disability insurance plan). But in other contexts, the defending entity solely controls the information that determines entitlement, leaving the claimant with no meaningful way to meet his burden of proof. This is one of those cases.

---

[3] Although not central to our resolution of this case, we note that on remand, the district court also may wish to consider whether defendants met the standard of meaningful dialogue in the administrative claims process, including whether the Committee's denial letters dated January 10, 2012 and June 29, 2012 were written in common-sense language that a lay person could understand or respond to, and whether the Committee sought the information it needed to make a reasoned decision. *See Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997); *see also Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 870–74 (9th Cir. 2008).

The district court placed the burden of proof on Barton to establish that his various ADT-related employers participated in defendants' Plan, and that he worked the requisite hours per year. There are two problems with this approach. First, defendants are in a far better position to ascertain whether an entity was a participating employer. After all, they determine which employers participate in the plan. Indeed, both Plans state that affiliates or controlled companies may only participate if the company's Board of Directors authorizes them to do so. Yet defendants asserted in the district court that they "have no records indicating whether the entities [identified as Barton's employers in the Social Security records] were Participating Subsidiaries in the Plan at any time." If Barton has made a prima facie case that he is eligible for a pension, his claim does not fail simply because he cannot initially prove whether defendants' Board of Directors authorized his employers to participate in the Plans. Defendants never explain how the long-retired Barton could possibly answer this question if even they have no relevant records, particularly when, during his many years of employment, the corporate sub-entities were not evident from the company materials provided to Barton.[4] It is illogical and unfair for us to require Barton to close this gap, and the dissent points to nothing in ERISA that supports such a Kafkaesque regime where corporate restructuring can license a plan administrator to throw up his hands and say "not my problem."

---

[4] Defendants argue that the absence of recorded service by Barton in their records proves that he did not work for a participating employer and is not entitled to a pension benefit. But they fail to explain why they cannot identify which affiliated companies they approved to participate in their Plans, nor how Barton could obtain such information.

It should not greatly burden an ERISA-compliant entity to determine what companies were authorized as "participating employers," so the entity, not the claimant, should bear the risk of insufficient records. *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises."). As we explained in *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*:

> The records that employers are required to keep by the FLSA [Fair Labor Standards Act] and by ERISA may be the only evidence available to employees to prove that their employers have failed to compensate them in accordance with the statute. An employer cannot escape liability for his failure to pay his employees the wages and benefits due to them under the law by hiding behind his failure to keep records as statutorily required.

839 F.2d 1333, 1338 (9th Cir. 1988).

This shift also follows naturally from ERISA's disclosure requirements. Section 502(c)(1) provides for the imposition of penalties on a plan administrator who has not complied with disclosure requirements. 29 U.S.C. § 1132(c)(1). One such requirement, section 104(b)(4), mandates supplying participants with certain plan information, such as the summary plan description, annual report, or "other instruments under which the plan is established or operated."

29 U.S.C. § 1024(b)(4). These disclosure requirements and the corresponding penalties function to ensure that an individual is duly informed of basic information relating to his pension plan:

> As the legislative history bears out, the documents contemplated by § 104(b)(4) are those that allow "the individual participant [to] know [ ] exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted."

*Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 690 (9th Cir. 1995) (en banc) (quoting S. Rep. No. 127, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4863).[5]

It follows that if Barton has made a prima facie case that he is entitled to pension benefits, it is properly defendants' burden to clarify what entities are covered under the Plans in the first instance. Employers, plans, and plan administrators must know the terms and conditions of the benefits they offer

---

[5] Section 104(b) illustrates ERISA's underlying policies of "promoting informed financial decision making" and "protecting the reliance interests of plan participants and beneficiaries." Peter Joseph Wiedenbeck, ERISA in the Courts 17 (Federal Judicial Center 2008). We do not address whether the plan administrator here failed to comply with the specific disclosure requirements of section 104(b).

and be able to identify covered employers and participating employees.[6] *Cf. Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 572 (1985) ("[ERISA's] reporting and disclosure standards require benefit plans to furnish all participants with various documents informing them of their rights and obligations under the plan . . . a task that would certainly include the duty of determining who is in fact a plan participant." (citation omitted)).

Additionally, the district court faulted Barton for not proving that he worked over 1000 hours a year for the twenty years he was employed by ADT or its affiliates. But requiring Barton to prove his hours over the course of two

---

[6] Defendants cite several cases to argue that Barton has the burden "to provide the Committee with information sufficient to show an entitlement to a benefit under the plan." These cases are inapposite. In *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 439 (3d Cir. 1997), the plan itself allocated the burden to the claimants. Defendants assert for the first time in their supplemental briefing that the 1985 Plan similarly allocates the burden of proof to the claimant. Their argument is based solely on language contained in an informational document entitled "Applying for Benefits and Claim and Appeal Procedures." While it is not clear from the record whether this document provides terms of the 1985 Plan, it is clear that defendants waived this argument when they failed to raise it in their answering brief. *See, e.g.*, *United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011) (holding an argument waived when available at the time an answering brief is filed but not raised in it). In the other cases, the district court found that the plaintiffs bore the burden of providing evidence of a personal medical problem—information within their possession—to claim disability benefits. *See Schwartz v. Metro. Life Ins. Co.*, 463 F. Supp. 2d 971, 982 (D. Ariz. 2006); *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 63 F. Supp. 2d 1145, 1157 (C.D. Cal. 1999), *aff'd*, 370 F.3d 869 (9th Cir. 2004) (holding that it was not improper to place the initial burden on the claimant where the insurance company informed her of the information it needed and advised her to call them if she had questions).

decades is unreasonable and inconsistent with the goals of ERISA. That is especially so where, as here, nothing indicates that Barton was warned at the start of his career that he needed to retain a log of his hours to obtain pension benefits a generation or two later. We have previously shifted the burden of proving the number of hours an employee works where the calculation of damages is uncertain due to defendants' failure to keep statutorily required records. *Brick Masons*, 839 F.2d at 1337–39.

We find the reasoning of *Brick Masons* persuasive in this context. *Brick Masons* involved two wholly owned subsidiaries of one parent company. *Id.* at 1335. One, Industrial, had a collective bargaining agreement requiring it to contribute to the union's fringe benefit trust funds (Trust) based on hours that union employees worked. *Id.* The other, Harris, was non-union. *Id.* The Trust sued to recover contributions for hours that Harris masons had worked on Industrial jobs. *Id.* It was undisputed that non-union masons had performed work for Industrial, but the Trust could not prove the exact number of hours because Industrial had failed to maintain certain records required under ERISA. *Id.* at 1337–38. This court held that "once the Trust Funds proved the fact of damage and Industrial's failure to keep adequate records, the burden shifted to Industrial to come forward with evidence of the extent of covered work performed by the 35 Harris employees." *Id.* at 1338–39. Industrial could not do so, and consequently was required to pay contributions for *all* hours that non-union masons worked during the time period where they were shown to have performed *some* covered work. *Id.* at 1339.

The *Brick Masons* court also found support in *Anderson v. Mt. Clemens Pottery Co*. There, the Supreme Court held

that where an employer fails to keep adequate records of hours worked as required by FLSA, the employee carries his burden of establishing damages "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." 328 U.S. at 687. The Court reasoned that, where it was the employer's duty to keep the relevant records, the employer could not complain that the related damages were inexact. *Id*. at 688.

Accordingly, we hold that where a claimant has made a prima facie case that he is entitled to a pension benefit but lacks access to the key information about corporate structure or hours worked needed to substantiate his claim and the defendant controls such information, the burden shifts to the defendant to produce this information.**[7]** Assuming that Barton can establish a prima facie case on remand, defendants will then bear the burden of production as to whether he worked sufficient hours for a participating employer to collect a pension.

We recognize that fiduciaries of a defined benefit pension plan have a duty to protect the pooled funds and distribute benefits only to those who qualify. *See, e.g.*, *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) ("An ERISA fiduciary is 'obligated to guard the assets of the [Plan] from improper claims, as well

---

**[7]** This does not require defendants to produce records listing entities *not* covered by their pension plans. *Cf.* Dissent at 25–26, 27. It requires only that they reveal which companies did in fact participate in their plans—information they must know to fulfill their fiduciary duty to only distribute pension funds to qualified individuals.

as to pay legitimate claims.'" (alteration in original) (quoting *Brogan v. Holland*, 105 F.3d 158, 164 (4th Cir. 1997))). We do not suggest that anyone can force a company to produce this corporate information by merely asserting that he is owed a pension—a plaintiff must put forth objective proof. *See, e.g.*, *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("[A] self-serving declaration does not always create a genuine issue of fact for summary judgement: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence.").

Where a claimant, through documentary or other objective evidence, has made a prima facie case that he is entitled to a pension but has no means except for information in the defendant's control to establish that his work was for a "covered employer" and of sufficient duration, the burden then shifts to the defendant to produce such information. A plaintiff claiming pension benefits will often have access to at least some objective documentation of prior employment—such as Social Security records, W-2 statements, income tax returns, and pay stubs—to make his prima facie case. *Cf. Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259 F.3d 1063, 1066–67 (9th Cir. 2001) (holding that the burden does not shift under *Brick Masons* where the plaintiff did *not* produce sufficient evidence to meet the required threshold showing).

We leave it to the district court to determine in the first instance whether Barton has established a prima facie case. In doing so, it can consider the evidence available at trial, such as Barton's Social Security records, W-2 statements, pay

stubs with the pension box marked, and letter thanking him
for ten years of service.

## C. Statutory Penalties

The district court correctly held that to recover statutory
penalties based on a plan administrator's refusal to comply
with ERISA's disclosure obligations, a plaintiff must qualify
as a plan participant. *See* 29 U.S.C. § 1132(c)(1). Thus, if
Barton does not set forth a colorable pension claim, he cannot
assert a violation of ERISA's disclosure requirements. *See
Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). As
this issue turns on the ultimate merits of Barton's claim for
pension benefits, we reverse the judgment for defendants.

## III. CONCLUSION

This case ultimately is about burdens—to qualify for his
pension, must a former employee who quit working for the
company more than twenty-five years ago decipher the
corporate structure of his former employer from documents
that were not disclosed to him? Should he have saved all of
his pay stubs in the off chance that his employer would
demand proof that he met the hours requirement for obtaining
a pension? Or should the corporate defendant bear this load?
ERISA, our precedent, and common sense dictate that the
corporate defendant should not lay that arduous task at the
feet of former employees. To hold otherwise would
essentially reward Lucy for pulling the football away from
Charlie Brown, something that we do not believe Congress
intended when it enacted ERISA. *See It's Your First Kiss,
Charlie Brown* (CBS television broadcast Oct. 24, 1977).

Accordingly, we **REVERSE** the judgment and **REMAND** this matter to the district court so it can apply the now-clarified burden of proof in this case.

---

IKUTA, Circuit Judge, dissenting:

Today the majority goes off the rails. Its one-off burden-shifting rule, apparently specially designed to let Barton win on one element of his claim for benefits under an ERISA plan, is not only contrary to the Supreme Court's direction that courts should not make "ad hoc exceptions" to the broad abuse of discretion standard applicable in this context, *Conkright v. Frommert*, 559 U.S. 506, 513 (2010), but it also does damage to our precedent and basic principles of ERISA law. Under the abuse of discretion review applicable to Barton's claim, Barton must show that the plan administrator's decision was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011). There is no other burden of proof. And even when de novo review is applicable, we have held that only the claimant—not the plan administrator—has the burden of proof. *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294–95 (9th Cir. 2010). I dissent.

I

Under our precedent, when a claimant challenges the denial of benefits under 29 U.S.C. § 1132(a)(1) and the ERISA plan at issue grants discretion to the plan administrator, the district court conducts a bench trial to

determine if the plan administrator abused its discretion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962–65 (2006). The scope of evidence considered at such a trial is generally limited to the administrative record. *Id.* at 970 ("Today, we continue to recognize that, in general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion, but may admit additional evidence on de novo review."). There are exceptions to the rule, as when the district court needs to consider extrinsic evidence to determine how much weight to give to a claimed conflict of interest on the part of a plan administrator, or when the administrator failed to follow procedural requirements, *id.* at 970, 972–73, but the majority does not suggest that these exceptions are applicable here.

In reviewing the plan administrator's decision in light of the administrative record, a court may not "substitute [its] view for that of the factfinder." *Salomaa*, 642 F.3d at 676. Rather, the scope of review is limited: the court may consider only whether the plan administrator's decision was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* This standard of review applies to the plan administrator's factual determinations as well as its ultimate decision. *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1069–70 (9th Cir. 1999). Under deferential review, a district court considers only whether the claimant showed that the plan administrator's benefit decision was unreasonable, and the court must uphold

the decision so long as it is logical, plausible, and supported by the record, *id*; there is no other burden of proof.[1]

Only when a district court reviews a plan administrator's decision denying benefits under a de novo standard of review does our precedent require a district court to impose the proper burden of proof.  Doing so makes sense in this context:  instead of deferring to the plan administrator's decision, the district court must evaluate the evidence de novo, and therefore must determine which party has the burden of establishing each fact required for eligibility under an ERISA plan.  Under such de novo review, the burden of proof remains firmly on the claimant.  *Muniz*, 623 F.3d at 1294–95 ("As concluded by other circuit courts which have addressed the question, when the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant.").  And we have rejected the argument that the claimant may shift the burden of proof to the plan administrator.  *Id.* (rejecting the claimant's argument that once he met the initial burden of proving disability, the burden of proof shifts to the plan to justify its decision to terminate benefits).

## II

The district court correctly followed our precedent.  It first determined that the plan gave discretion to the administrators.  The majority concedes that determination

---

[1] Different rules may apply when there is evidence that "a plan administrator's self-interest caused a breach of the administrator's fiduciary obligations to the claimant," *see Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999), but this case does not give rise to such an issue, and the majority does not hold otherwise.

was correct.  Maj. op. at 11.  It then reviewed the evidence of conflict of interest and concluded that it would review the plan administrator's decisions with a low level of skepticism. The majority does not say this was in error.  *Id.* at 13. Finally, the court determined that there were no procedural irregularities present.  Therefore, the district court correctly limited its review to the administrative record.

The plans at issue here require a claimant to establish, among other things, that: (1) he worked for one or more covered employers, as defined in the plans, (2) for a continuous term of at least ten years.  The evidence in the administrative record showed that Barton was employed by various ADT companies, as well as other companies, from 1967 to 1986, but did not show that he had continuous service for ten years with any ADT company, nor that any of the ADT companies were "covered" as required by the Plan. Specifically, documents in the record showed that in 1967, Barton started working at ADT of Maine.  From 1967 to 1976, Barton received sporadic wages from ADT of Massachusetts, Mittman Realty Co, Inc., Pentate Filtration, Inc., the Marine Reserves, and Ginn-Marvin Moving & Storage Co.  In 1982 he started working for ADT Diversified Service, Inc., in New Jersey, where he worked until 1985.  In 1985, Barton worked for ADT of Illinois, where he stayed until he resigned on September 11, 1986.  His resignation took effect on September 25, 1986.

The administrative record also included evidence that the plan administrator had a system to maintain and update records regarding pension benefit eligibility for employees and had an incentive for keeping accurate records.  A declaration from a member of the plan administration committee stated that those records contained no evidence

that Barton was a participant in the pension plan or that ADT of Massachusetts or ADT of Maine were participating employers. The declaration also set forth the committee's determination that Barton's evidence was inconsistent with a claim of continuous employment by a participating entity with no break in service.

Based on its review of the administrative record, the court made the factual finding that Barton did not establish that he had worked for a ten-year continuous period for a covered employer. This factual finding is not clearly erroneous. Accordingly, the court's conclusion that the plan administrator's benefits denial was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record is correct.

Indeed, there is no way to reach a different conclusion under our precedent. Although in *Salomaa* we concluded that a plan administrator's decision to deny benefits was illogical, implausible, and without support in the record where virtually all the evidence in the record pointed in the other direction, *Salomaa*, 642 F.3d at 676, the evidence here is more than adequate to support the plan administrator's decision. Nor could we reverse the district court's decision on the ground that the plan administrator abused its discretion because it knew or should have known of additional information that would substantiate Barton's claim. *See, e.g.*, *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 462–63 (7th Cir. 2001). Even if we adopted such a standard, no one has argued that the plan administrator is aware of evidence that would identify Barton's employers as "covered employers." Indeed, given ADT's multiple acquisitions, mergers, and divisions since 1986, it would be unsurprising if the plan

lacks records proving that certain ADT entities were *not* covered during the period from 1967 to 1986.

Nor did ADT have a legal duty to maintain such information. As the majority implicitly acknowledges, no ERISA provision requires a plan administrator to maintain a record of covered companies. Maj. op. at 15 n.5. The majority suggests that 29 U.S.C. § 1024(b)(4) illustrates the recordkeeping and disclosure requirements imposed on a plan administrator, Maj. op. at 14–16, but by its terms it does not require a plan administrator to keep the sorts of records at issue here.[2] The administrative record shows that the plan administrator provided the information required under § 1024(b)(4) to the extent Barton requested it and the majority does not suggest otherwise, *see* Maj. op. at 15 n.5.

III

Rather than follow our ERISA precedent, which requires us to affirm the district court, the majority abandons it entirely.

First, the majority invents a burden-of-proof standard (along with a burden-shifting approach) that is in direct conflict with our abuse of discretion standard. The majority holds that: "Where a claimant, through documentary or other objective evidence, has made a prima facie case that he is entitled to a pension but has no means except for information

---

[2] 29 U.S.C. § 1024(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

in the defendant's control to establish that his work was for a 'covered employer' and of sufficient duration, the burden then shifts to the defendant to produce such information." Maj. op. at 19. Under this rule, if Barton has established a "prima facie case that he is entitled to a pension" (and the majority does not specify what this means), the burden shifts to the plan administrator to prove that the claimant's work was *not* "for a covered employer."[3] If the plan administrator does not have information relevant to the claimant's work history, this *may* mean (again, the majority is unclear) that the claimant prevails, and the district court must invalidate the plan administrator's denial of benefits even if the plan administrator's decision was not illogical, implausible, or without support in the record. This is directly contrary to our deferential standard, *Abatie*, 458 F.3d at 965, and contrary to the Supreme Court's direction that courts should not make "ad hoc exceptions" to the abuse of discretion standard, *Conkright*, 559 U.S. at 513.

Here, for instance, if the district court on remand determined that Barton has made a "prima facie case that he is entitled to a pension," and the plan administrator cannot introduce any extrinsic evidence establishing that ADT of Massachusetts, ADT of Maine, or ADT of Illinois were *not* "covered employers" as defined in the plans,[4] the district

---

[3] Of course, such a burden-shifting approach is contrary to our burden of proof standard even under de novo review, *see Muniz*, 623 F.3d at 1294–95, let alone on abuse of discretion review, where the court does not assign a burden of proof at all.

[4] The majority's burden-shifting rule presumably contemplates that the plan administrator will have an opportunity to introduce extrinsic evidence on this issue, which is also contrary to our precedent. *Abatie*, 458 F.3d at 970, 972–73.

court would have to credit Barton's allegations that these companies are covered employers, which *could* compel the conclusion that Barton is entitled to benefits under the plan.[5] But such a result would be directly contrary to our and Supreme Court case law, *see Conkright*, 559 U.S. at 513; *Abatie*, 458 F.3d at 965, because it would require the plan administrator to provide benefits to Barton even though the plan administrator did not abuse its discretion in determining that Barton did not work for covered employers for ten years of continuous service.

The majority argues that its new burden-shifting rule does not require the plan administrator to carry the burden of producing "records listing entities *not* covered by their pension plans," but rather requires the plan administrator to "reveal which companies did in fact participate in their plans." Maj. op. at 18 n.7. According to the majority, plan administrators must know this information in order to "fulfill their fiduciary duty to only distribute pension funds to qualified individuals." *Id*. But the plan administrator here elected to fulfill its fiduciary duty by maintaining and updating a record of past and present employees who are entitled to pensions, rather than by listing covered companies. The majority provides no explanation as to why this approach breached the plan administrator's fiduciary duty or what authority required the plan administrator to maintain a

---

[5] The majority is unclear whether a determination that some of Barton's former employers must be deemed to be "covered employers" under a burden-shifting approach also compels the conclusion that Barton is per se entitled to benefits. Since the plan requires Barton to have engaged in ten years of continuous service with a covered employer, such a ruling would directly contradict the terms of the plans.

ESTATE OF BARTON V. ADT                    29

complete list of covered companies in order to comply with the majority's unprecedented new rule.

Moreover, assuming that administrators of multi-employer plans like this one (ADT instituted its first plan on April 1, 1913) frequently lack information about which historical companies are "covered" as defined in the plan, the majority's new rule does not just shift a burden, but as a practical matter, *could* make the claimant eligible for benefits whenever the historical information is scanty or unavailable. Putting the "risk of insufficient records" on the ERISA plan, as required by the majority, enhances the risk that uninsured claimants will draw funds away from the legitimate beneficiaries. That risk is in derogation of one of ERISA's core policies: to protect the "soundness and stability of plans with respect to adequate funds to pay promised benefits." 29 U.S.C. § 1001(a); *see also Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (holding that fiduciaries of benefit plans are "obligated to guard the assets of the Plan from improper claims") (internal quotation marks and alteration omitted).

Lacking any support for its new rule in our ERISA case law, the majority is forced to justify its rule by reference to cases addressing inapposite issues. *See Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333, 1337–39 (9th Cir. 1988); *see also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946).

In *Brick Masons*, a masonry company entered into a contract to make contributions to multi-employer welfare plans based on hours worked by covered employees. 839 F.2d at 1335. The welfare plans proved that during the relevant time period, the company had breached the contract

by using covered employees to perform covered work and failing to make the required contributions, which resulted in damage to the welfare plans. *Id*. Although there was only limited evidence as to the extent of the covered work (and hence, limited evidence of the amount of the missing contributions), the welfare plans proved that this data was unavailable because the company had violated a statutory requirement to keep adequate records of its employees' hours. *Id.* at 1338. We held that because the welfare plans had proved "the fact of damage" and had also proved that the company failed to keep statutorily required records, the burden shifted to the company to come forward with evidence that would show the extent of damages. *Id.* at 1338–39. Because the company did not have records regarding the amount of covered work performed by the covered employees, this in effect required the company to pay the full amount estimated by the welfare plans. *Id*.

The majority also cites *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), which involved a suit by employees under the Fair Labor Standards Act claiming that they were deprived of overtime compensation. *Id.* at 684. The Court held that where an employee proved that he "has in fact performed work for which he was improperly compensated," and "the amount and extent of that work," but the employer violated its statutory duty to keep adequate and accurate records, the burden shifted to the employer to disprove the employees' estimate of the work performed. *Id.* at 686–88.

*Brick Masons* and *Mt. Clemens* have nothing to do with the question presented here, whether a plan administrator abused its discretion in denying a claimant's demand for benefits. The district courts in *Brick Masons* and *Mt.*

*Clemens* were not considering whether a plan administrator's decision was illogical, implausible, or without support in the record, but rather were conducting a de novo review of the amount of damages to which claimants were entitled. The courts shifted the burden to the defendant to show the extent of damages only after the plaintiffs had both: (1) successfully proven all elements of their claims; and (2) established that the defendant's violation of a statutory requirement to maintain necessary records precluded them from proving the precise amount of damages caused by the defendant. Here, by contrast, Barton has not successfully proven *any* element of his claim: The question is not the "amount of damages" owed to Barton, but rather whether he is owed anything at all. Moreover, Barton has not pointed to any violation of a statutory recordkeeping requirement. Even if the majority's *Brick Masons* theory were otherwise applicable in the context of abuse of discretion review, the lack of any statutory violation would preclude a court from shifting the burden of proof. *See Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259 F.3d 1063, 1066–67 (9th Cir. 2001) (noting that the "first threshold burden" for switching the burden of proof under *Brick Masons* is proving that the plan administrator "failed to keep adequate records" under ERISA).

## IV

In short, the majority's ad hoc rule designed to help Barton in this case is a disaster. The majority's requirement that the district court allocate a burden of proof when it is supposed to be reviewing a plan administrator's decision for abuse of discretion makes no sense and is contrary to our case law. And the rule itself, which verges on the incomprehensible, will defy district courts' efforts to apply it.

Given that this rule was apparently developed to help a single claimant, one can only hope that this strange rule will be confined to the limited facts of this case.  I dissent.